**Linda J. Larkin**, OSB# 792954
E-mail: linda@bennetthartman.com
**BENNETT HARTMAN, LLP**
210 SW Morrison Street, Suite 500
Portland, OR   97204-3149
Telephone:  503-227-4600
Facsimile:  503-248-6800
**Attorney for All Plaintiffs**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TIMOTHY J. GAUTHIER AND GARTH BACHMAN, TRUSTEES OF THE OREGON AND SOUTHWEST WASHINGTON NECA-IBEW ELECTRICAL WORKERS AUDIT COMMITTEE,<br><br>Plaintiffs,<br><br>vs.<br><br>CROWN VOLTAGE, INC. a Washington Corporation; DANIEL TUCKER, individually; and STACY LACOMBE, individually,<br><br>Defendants. | Civil No. _____<br><br>COMPLAINT<br><br>(ERISA Action for Delinquent Contributions, Pendent Claims for Breach of Agreement) |

**PARTIES**

1.   At all material times hereto, Plaintiffs Timothy J. Gauthier and Garth Bachman are Trustees of and comprise the Oregon-Southwest Washington NECA-IBEW Electrical Workers Audit Committee (the "Audit Committee"), and are the designated collection agents for the trustees of the Trust Funds, authorized to collect from signatory employers the fringe benefit

COMPLAINT                                                                                                        PAGE 1 of 10

contributions and other amounts required to be paid by employers or withheld from their employees' wages, under the Collective Bargaining Agreements ("CBAs") and the provisions of the Trust Agreements.

2. Pursuant to the terms of the CBAs, and pursuant to policies and procedures agreed upon by the Oregon-Columbia Chapter of National Electrical Contractors Association ("NECA"), International Brotherhood of Electrical Workers, IBEW L. 48 ("IBEW L. 48"), International Brotherhood of Electrical Workers Harrison Electrical Workers Trust Fund ("Harrison Trust"), Edison Pension Trust ("Edison Trust"), National Electrical Benefit Fund ("NEBF"), International Brotherhood of Electrical Workers District No. 9 Pension Plan ("District 9 Pension Plan"), NECA-IBEW Electrical Training Trust ("Training Trust"), the Cornell-Hart Pension Trust Fund ("Cornell-Hart"), and the Barnes-Allison Labor-Management Cooperation Trust Committee ("BALMCC"), the Audit Committee is authorized to take appropriate action, on behalf of the Trust Funds and IBEW L. 48 to collect all amounts owed by an employer under, and enforce the terms of, the CBAs requiring payment of wage withholdings, fringe benefit contributions, interest, liquidated damages, and collection costs.

3. At all material times hereto, Harrison Trust is an employee benefit plan within the meaning of 29 USC § 1002, *et. seq.* of ERISA. Harrison Trust is administered by a Board of Trustees composed of an equal number of representatives from labor and management designated in accordance with the provisions of 29 USC § 186.

4. At all material times hereto, Edison Trust is an employee benefit plan within the meaning of 29 USC § 1002, *et. seq.* of the Employee Retirement Income Security Act of 1974, as amended (ERISA). Edison Trust is administered by a Board of Trustees composed of an

equal number of representatives from labor and management designated in accordance with the provisions of 29 USC § 186.

5. At all material times hereto, NEBF is an employee benefit plan within the meaning of 29 USC § 1002, *et. seq.* of ERISA. NEBF is administered by a Board of Trustees composed of an equal number of representatives from labor and management designated in accordance with the provisions of 29 USC § 186.

6. At all material times hereto, District No. 9 Pension Plan is an employee benefit plan within the meaning of 29 USC § 1002, *et. seq.* of ERISA. District 9 Pension Plan is administered by a Board of Trustees composed of an equal number of representatives from labor and management designated in accordance with the provisions of 29 USC § 186.

7. At all material times hereto, the Training Trust was and is an employee benefit plan within the meaning of 29 USC § 1002, *et. seq.* of ERISA. The Training Trust is administered by a Board of Trustees composed of an equal number of representatives from labor and management designated in accordance with the provisions of 29 USC § 186.

8. At all material times hereto, Cornell-Hart was and is an employee benefit plan within the meaning of 29 USC § 1002, *et. seq.* of ERISA. Cornell-Hart is administered by a Board of Trustees composed of an equal number of representatives from labor and management designated in accordance with the provisions of 29 USC § 186.

9. At all material times hereto, BALMCC was and is an employee benefit plan within the meaning of 29 USC § 1002, *et. seq.* of ERISA. BALMCC is administered by a Board of Trustees composed of an equal number of representatives from labor and management designated in accordance with the provisions of 29 USC § 186.

10. At all material times hereto, IBEW L. 48 is a labor organization with its principal office and place of business in Multnomah County, Oregon, representing employees of the defendant.

11. Herein, Harrison Trust, Edison Trust, NEBF, Training Trust, Cornell-Hart, BALMCC, and District 9 Pension together will be collectively referred to as the Trust Funds ("Trust Funds").

12. At all material times hereto, defendant Crown Voltage, Inc. ("Crown Voltage") was and is a Washington corporation registered to do business in Oregon.

13. At all material times hereto, defendant Stacy LaCombe was a corporate officer and principal of defendant Crown Voltage, and a resident of Clark County, Washington.

14. At all material times hereto, defendant Daniel Tucker was a corporate officer and principal of defendant Crown Voltage, and a resident of Clark County, Washington.

## JURISDICTION AND VENUE

15. This court has jurisdiction over the First Claim for Relief brought pursuant to Sections 502 and 515 of ERISA, 29 USC §§ 1132 and 1145, and pursuant to 29 USC §185.

16. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 USA § 1132.

17. At all material times to this proceeding, defendant Crown Voltage was bound by written CBAs with IBEW L. 48.

18. Plaintiffs maintain their principal office, within the meaning of 29 USC § 1132(k), in the District of Oregon.

19. By virtue of the provisions in the CBAs, Crown Voltage agreed to be bound to the terms of the Trust Agreements and plans for each fringe benefit fund, and acknowledged, accepted, and agreed to the delegation of the collection authority to the Audit Committee.

20.  The Trust Agreements provide that plaintiffs may initiate legal proceedings in the venue of Multnomah County, Oregon.

21.  The Court should assume pendent jurisdiction over the Second, Third, and Fourth Claims for Relief against defendants which alleges breach of contract for the following reasons:

    a.  The Court has jurisdiction over Plaintiffs' First Claim for Relief which alleges violations of ERISA and of the LMRA;

    b.  The Second, Third, and Fourth Claims for breach of contract are based upon the same operative facts which are alleged in Plaintiffs' ERISA and LMRA claims; and

    c.  Judicial economy, convenience and fairness to the parties will result if the Court assumes and exercises pendent jurisdiction over Plaintiffs' Second, Third, and Fourth Claims for Relief.

**FIRST CLAIM FOR RELIEF**

**(ERISA ACTION FOR OUTSTANDING TRUST FUND CONTRIBUTIONS AND SPECIFIC ENFORCEMENT OF THE CBA)**

22.  Plaintiffs re-allege and incorporate by this reference paragraphs 1 through 21 of this complaint as if set forth in full.

23.  Under the terms of the CBAs, Crown Voltage agreed to report labor performed by its employees and pay all contribution and withholdings required under the CBAs and applicable Trust Agreements.

24.  Under the CBAs, Crown Voltage also agreed:

    a.  To file contribution reports for each period of covered employment;

    b.  To pay contributions and amounts owing by the fifteenth (15th) day of the month following each applicable period;

      c.      To pay liquidated damages to the Trust Funds for each month of delinquent contributions;

      d.      To pay interest at the rate of 1.0 percent per month from the date contributions were due, until paid; and

      e.      To pay reasonable attorney fees and costs for all collection efforts.

25. Defendant Crown Voltage filed reporting but failed to properly fund reports as required under the terms of the CBAs for the hours worked in March 2019.

26. The total underpayment of contributions as disclosed by reporting submitted for March 2019 by Defendant is in the sum of $34,882.34, all of which remains outstanding and unpaid.

27. Based upon the unpaid contributions Crown Voltage owes to the Trust Funds liquidated damages to which the Trust Funds are entitled under the Agreements and 29 USC § 1132(g)(2) in the sum of $6,998.32.

28. Based upon the unpaid contributions owing to the Trust Funds under 29 USC § 1132(g)(2) and the Trust Agreements now due and owing from Crown Voltage is interest on the unpaid contributions at the rate of one (1.0%) percent per month from the date contributions were due until paid.

29. The Trust Agreements which govern the Trust Funds provide that in the event that defendant Crown Voltage fails to pay employee benefit contributions and legal proceedings are instituted, the Trust Funds are entitled to recover a reasonable attorney fee and all their costs to be determined herein. Plaintiffs are also entitled to their reasonable attorney fees and costs under the provisions of 29 USC § 1132(g)(2).

///

COMPLAINT                                                            PAGE 6 of 10

## SECOND CLAIM FOR RELIEF

## (PENDANT CLAIM FOR BREACH OF CONTRACT)

30. Plaintiffs re-allege paragraphs 1 through 29 above as if fully set forth herein.

31. The CBAs provide that the Audit Committee shall enforce collection of and Crown Voltage shall pay wage withholding and forward to the Audit Committee's collection agent, certain amounts due to employees for union dues, Political Action Committee contributions, and vacation funds.

32. The CBAs provide that Crown Voltage shall pay to the Audit Committee's collection agent certain amounts due to employees for Administrative Fund contributions.

33. The amounts due for union dues, the Political Action Committee contributions, vacation funds and the Administrative Fund are due and payable on the 15th day of the month following the month in which the hours were worked and wages were earned which form the basis of the calculation of the amounts due.

34. For the months of March 2019, Crown Voltage reported but did not pay the wages withheld or the sums due for: union dues, the Political Action Committee contributions, vacation funds, and Administrative Funds in the amount of $4,909.55.

35. Pursuant to ORS 82.010 *et seq* monies which become due and owing bear interest at the rate of nine percent per annum. Interest accrues daily on the total amount due for PAC, union dues, vacation funds, and Administrative Funds at the rate of nine percent (9%) per annum. Plaintiff should be awarded interest on the balance due for wages withheld and/or due from the date due until Judgment is obtained at the rate of nine percent (9%) per annum or the sum of $130.74 calculated through July 31, 2019.

/ / /

## THIRD CLAIM FOR RELIEF

## (BREACH OF FIDUCIARY DUTY BY STACY LACOMBE AND DANIEL TUCKER)

36.   Plaintiffs re-allege and incorporate by this reference paragraphs 1 through 35 of this complaint as if set forth in full.

37.   Defendant Stacy LaCombe is an officer of Crown Voltage. She signed the CBA on behalf of Crown Voltage and had signing authority for the company.

38.   Defendant Daniel Tucker is an officer of Crown Voltage.

39.   Due to their positions as officers of Crown Voltage, Defendants Lacombe and Tucker exercised discretionary control over the disposition of plan assets and were fiduciaries under ERISA, 29 USC sec. 1002(21)(A) iii.

40.   Defendants knew that Crown Voltage was not fully funding its fringe benefit contributions and wage withholdings to Plaintiffs.

41.   Defendants derived a personal benefit by failing to fully fund fringe benefit contributions and wages withholdings to Plaintiffs.

42.   During the period in which Crown Voltage failed to fully fund fringe benefits contributions and wage withholdings, Defendants personally and through their status as officers of Crown Voltage received benefits from Crown Voltage in full knowledge that fringe benefits and wage withholdings remained unpaid.

43.   Defendants were fiduciaries and because they disposed of the wage withholdings of their employees, and for their own benefit, Defendants are personally liable to the Plaintiffs for the unpaid employee wage withholdings due from their breach of fiduciary responsibility.

/ / /

/ / /

## FOURTH CLAIM OF RELIEF

## (CONVERSION CLAIM AGAINST DEFENDANTS UNDER OREGON LAW)

44. Plaintiffs re-allege and incorporate by this reference paragraphs 1 through 43 of this complaint as if set forth in full.

45. For hours worked in March, 2019, in their capacity as officers of Crown Voltage, Inc. Stacy LaCombe and Daniel Tucker withheld or should have withheld from employee paychecks vacation pay and union dues. The vacation pay belonged to the employees and the union dues was earned by the employees as part of their wage package and is payable to Local 48. Crown Voltage and/or Defendants Daniel Tucker and Stacy LaCombe wrongfully retained the vacation pay and the union dues.

46. Defendants Stacy LaCombe and Daniel Tucker are personally liable for payment of these vacation pay and union dues obligations, in the sum of $4,909.55, because they controlled the money in trust for the rightful owners yet failed to remit those sums. Crown Voltage is liable for this obligation because it failed to remit the vacation pay and union dues in its possession to the rightful owners.

46. Plaintiffs are entitled to interest on the delinquent vacation pay and union dues from the date payment became due, until paid, at the rate of 9% per annum pursuant to the provisions of ORS 82. 010, which amount is $130.74 through August 1, 2019.

WHEREFORE, plaintiffs pray for judgment against Crown Voltage as follows:

1. Under the First Claim for Relief from defendant Crown Voltage:

    a. For unpaid contributions in the amount of $34,882.34;

    b. For liquidated damages due arising from the non-payment of contributions in the sum or $6,998.32; and

    c.    For interest arising from the late payment of calculated at the rate of 1% per month from the date payment was due for each month through the date payment is received, or calculated in the amount of $344.03 through January 31, 2019.

2.    Under the Second Claim for Relief against defendant Crown Voltage:

    a.    For wage withholdings in the sum of $4,909.55; and

    b.    For interest at the rate of nine percent per annum or calculated from the date each payment was due through August 1, 2019 in the total sum of $130.74.

3.    Under the Third and Fourth Claims for Relief against Defendants Daniel Tucker and Stacy LaCombe:

    a.    For wage withholdings in the sum of $4,909.55; and

    b.    For interest at the rate of nine percent per annum or calculated from the date each payment was due through August 1, 2019 in the total sum of $130.74.

4.    Under all claims for relief above, for Plaintiff's reasonable attorney fees and costs and disbursements incurred herein.

DATED this Monday, July 29, 2019.

BENNETT HARTMAN, LLP

/s/ Linda J. Larkin
Linda J. Larkin, OSB No. 792954
Telephone: 503-227-4600
E-Mail: linda@bennetthartman.com
Attorney for All Plaintiff

COMPLAINT                                                          PAGE 10 of 10